UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RYAN N. DUNCAN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>RIO SUITE HOTEL & CASINO, et al.,<br><br>　　　　　Defendants. | Case No. 2:12-cv-00565-MMD-VCF<br><br>ORDER<br><br>(Def.'s Motion to Dismiss – dkt. no. 6) |

**I.　SUMMARY**

Before the Court is Defendants Rio Suite Hotel and Casino ("the Rio") and Caesars Entertainment, Inc.'s ("Caesars") (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (Dkt. no. 6.) After considering Plaintiff's opposition and Defendants' reply, the Court grants in part and denies in part the Motion.

**II.　BACKGROUND**

This case arises out of alleged employment discrimination. Plaintiff's complaint alleges the following facts:

Plaintiff began work at the Rio as a paper hanger, painter, and dry waller on November 23, 2009. (Dkt. no. 1 at ¶ 8.) Around February 2010, Plaintiff and another co-worker openly attempted to unionize their fellow employees. (*Id.* at ¶ 10.) Near the end of 2010, Plaintiff was required to complete an "Anonymous Annual Survey" ("Survey") about his supervisor, Shawn Santana. (*Id.* at ¶ 11.) The Survey identified Plaintiff by his

Employee ID and the last two letters of his last name. (*Id.*) Within 3 weeks of completing the Survey, Santana confronted Plaintiff about the contents of the Survey.

On or about June 16, 2011, Plaintiff underwent surgery to repair his shoulder. (Dkt. no. 1 at ¶ 13.) Plaintiff's physician required Plaintiff to spend at least 11 weeks recuperating, and to return to work no earlier than September 2011. (*Id.* at ¶ 14.) Plaintiff's leave of absence authorization approved 10.5 weeks of leave. (*Id.*) In August 2011, Plaintiff's supervisor ordered Plaintiff to report to work or risk having his employment terminated. (*Id.* at ¶ 15.) Plaintiff returned to work in August 2011, two weeks before the doctor's recommended date of return. (*Id.*) Plaintiff was not provided with any special accommodations for his surgically repaired shoulder. (*Id.*)

After he returned to work, Santana and Plaintiff's other supervisor, Steven Magula, repeatedly harassed, demeaned, and called Plaintiff derogatory slurs. (Dkt. no. 1 at ¶ 16, 17.) In November 2011, Plaintiff was again required to complete another Survey. (*Id.* at ¶ 19.) In the November Survey, Plaintiff described the harassment by Santana and Magula and disclosed the presence of mold in the facility. (*Id.* at ¶ 19.) On December 14, 2011, Magula threatened Plaintiff about the contents of the November Survey. (*Id.* at ¶ 21.) Plaintiff complained to management about the harassment and disclosed the presence of mold and its accompanying health concerns, but no action was taken to remedy either. (*Id.* at ¶ 21.)

On December 15, 2011, Plaintiff was accused of smoking marijuana during a break and was ordered to be drug tested. (Dkt. no. 1 at ¶ 22.) Plaintiff waited at the facility for an extended time but was not given the test. (*Id.*) Plaintiff waited until after his shift would have ended before leaving the testing facility. (*Id.*) On December 23, 2011, Plaintiff was informed he was being terminated for failure to take a drug test. (*Id.* at ¶ 23.) Plaintiff alleges that he was, in fact, terminated in retaliation for his attempt to unionize workers, complaints about harassment, and disclosure of mold in the workplace.

///

On March 13, 2012, Plaintiff filed a charge of Discrimination and Retaliation with the Nevada Equal Rights Commission ("NERC") alleging retaliation and discrimination on account of his race and sex. (Dkt. nos. 1 at ¶ 24 and 6-1 at 3.) On March 23, 2012, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race, sex, and retaliation discrimination. (Dkt. no. 6-1 at 3.) On March 27, 2012, Plaintiff received a Right to Sue Letter from the EEOC. (Dkt. no. 1 at ¶ 25.)

Plaintiff filed this Complaint on April 5, 2012, asserting four claims based upon multiple legal theories. Claim 1 alleges wrongful termination under Title VII, NRS Chapter 613, the Genetic Information Nondiscrimination Act ("GINA"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA") based upon Plaintiff's temporary disability, attempts to unionize fellow workers, comments in the Survey, and disclosure of mold in the workplace. Claim 2 alleges hostile work environment under Title VII and NRS Chapter 613 based upon "homosexual remarks," racial slurs, retaliation, and Plaintiff's attempts to unionize fellow workers, complaints about harassment, and disclosure of mold in the workplace. Claim 3 alleges disability discrimination under Title VII and NRS Chapter 613 based upon Defendants' failure to provide accommodations after Plaintiff's shoulder surgery. Claim 4 alleges retaliation under Title VII and NRS Chapter 613 based upon Plaintiff's attempts to unionize fellow workers, statements in the Surveys, disclosure of mold, and disability.

Defendants move to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

### III.   DISCUSSION

#### A.   Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic*

3

*Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (*citing McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a Claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678. Mere recitals of the elements of a Claim, supported only by conclusory statements, do not suffice. *Id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged— but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks

4

omitted). A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

The Court also notes the well-established rule that *pro se* complaints are subject to "less stringent standards than formal pleadings drafted by lawyers" and should be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### B.  Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

Defendants argue that Plaintiff has failed to exhaust his administrative remedies with respect to his claims regarding disability, age, and genetic information discrimination, as well as on his state law claims. Additionally, Defendants argue that any claims relating to termination based on union activity are preempted by the National Labor Relations Act ("NLRA"). Thus, Defendants argue that the Court does not have jurisdiction over any of Plaintiff's claims.

Defendants' exhaustion argument should properly be framed as a Rule 12(b)(6) challenge to Plaintiff's Complaint, rather than an attack on this Court's jurisdiction to hear the suit. Defendants have, perhaps unknowingly, stumbled upon an area of "persistent procedural confusion that has bedeviled the courts of appeals." *Trs. of Screen Actors Guild-Producers Pension and Health Plans v. NYCA, Inc.*, 572 F.3d 771, 775 (9th Cir. 2009) (ERISA claim). Even if Plaintiff failed to exhaust his administrative remedies with respect to some of his claims, "[i]t is a cardinal principle of federal 'arising under' jurisdiction that any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits." *Id.* (quoting *Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone*, 197 F.3d 1003, 1008 (9th Cir. 1999)).

///

In the context of employment discrimination, the Supreme Court has held that a timely filing of an administrative remedy with the EEOC "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Thus, "[p]ursuit of administrative remedies is a condition precedent to a Title VII claim. The requirement, however, is not jurisdictional." *Temengil v. Trust Territory of Pac. Islands*, 881 F.2d 647, 654 (9th Cir. 1989) (citing *id.*). Notwithstanding courts' offhanded description of Title VII administrative exhaustion as a jurisdictional prerequisite to a suit,[1] the Court properly analyzes these arguments under Fed. R. Civ. P. 12(b)(6).[2]

However, Defendants' NLRA pre-emption argument is properly construed as a challenge to this Court's jurisdiction. 29 U.S.C. § 157 provides employees with the right "to self-organization, to form, join, or assist labor organizations, to bargain collectively . . . , and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, . . . ." Any interference, restraint, or coercion of employees in the exercise of those rights is an unfair labor practice. *Id.* at § 158(a)(1). Any discharge motivated by an employee's engagement in protected concerted activities amounts to a violation of § 158(a)(1) and is an unfair labor practice. *Fun Striders, Inc. v. NLRB*, 686 F.2d 659, 663 (9th Cir. 1981).

---

[1] *See, e.g.*, *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994).

[2] The *distinction* between a Rule 12(b)(1) and 12(b)(6) dismissal is not merely an error in form, however. While some exhaustion in some federal statutes has been held to be a jurisdictional requirement, *see, e.g.*, *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992) (Federal Tort Claims Act), it is not so in other arenas like employment discrimination. Consequently, federal subject matter jurisdiction cannot be waived or equitably skirted in cases like this one, whereas administrative exhaustion may be subject to a host of exceptions depending upon the statute giving rise to a claim. *See, e.g.*, *Josephs v. Pac. Bell*, 443 F.3d 1050, 1061 (9th Cir. 2005) (discussing exception to exhaustion requirement when EEOC misleads a plaintiff). In these circumstances, that a federal court may nonetheless hear a claim not formally exhausted implies that exhaustion is not jurisdictional. *See Zipes*, 455 U.S. at 396-98 (discussing cases where the Court considered the merits of arguments regarding administrative remedies).

The National Labor Relations Board ("NLRB") has primary exclusive jurisdiction over all claims arising from unfair labor practices. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244-45 (1959).

Here, assuming as true the facts alleged in the Complaint, Plaintiff's discharge was motivated, initially and at least in part, by his efforts to unionize his fellow employees, amounting to an unfair labor practice and a discharge in violation of § 158(a)(1). As primary exclusive jurisdiction over claims arising from unfair labor practices rests with the NLRB, this Court does not have subject matter jurisdiction over any claims arising out of Plaintiff's efforts to form a union. Thus, to the extent that Plaintiff's claims are based on efforts to unionize fellow workers, Plaintiff's first, second, and fourth claims are dismissed.

### C. Rule 12(b)(6) – Failure to State a Claim

After concluding that Plaintiff has demonstrated subject matter jurisdiction on his remaining non-NLRB claims, the Court turns to address the remaining claims under Rule 12(b)(6).

#### 1. Failure to Exhaust Administrative Remedies – ADA, ADEA and GINA

To the extent plaintiff attempts to bring Title VII, ADA, ADEA, or GINA claims, he must first have exhausted his administrative remedies. *See Josephs v. Pac. Bell*, 443 F.3d 1050, 1061 (9th Cir. 2006) (plaintiff must file administrative charge before filing ADA suit in federal court); *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002) ("a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim"); *Sanchez v. Pac. Powder Co.*, 147 F.3d 1097, 1099 (9th Cir. 1998) (same for ADEA claims); 29 C.F.R. § 1635.10 (new regulation adopted for GINA claims, incorporating, by reference, administrative exhaustion requirement from other discrimination statutes). Exhaustion of administrative remedies requires that the complainant file a timely charge with the EEOC, thereby allowing the agency time to

///

investigate the charge.  *See* 42 U.S.C. § 12117(a); 29 U.S.C. § 626(d); 42 U.S.C. § 2000ff-6.

In assessing whether a claim was brought before the EEOC, "[i]ncidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (internal quotation marks omitted).  Additionally, the district court may only hear charges that are "within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Leong v. Potter*, 347 F.3d 1117, 1121 (9th Cir. 2003).  A plaintiff's claims are reasonably related to allegations in the charge "to the extent that those claims are consistent with the plaintiff's original theory of the case," as reflected in the plaintiff's factual allegations and his assessment as to why the employer's conduct is unlawful.  *B.K.B.*, 276 F.3d at 1100.  The court construes the EEOC charges "'with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'" *B.K.B.*, 276 F.3d at 1100 (citing *Kaplan v. Int'l Alliance of Theatrical & Stage Emps.,* 525 F.2d 1354, 1359 (9th Cir. 1975)).

Where a claim before the district court is made based on a protected class, theory, or statute different from the basis of the claim before the EEOC, the claim is not like or reasonably related to the EEOC charge allegations.  For example, in *Leong v. Potter*, the court held that the plaintiff's charge with the EEOC asserting race based discrimination was not reasonably related to his later claimed Rehabilitation Act disability claim.  *Leong*, 347 F.3d at 1122.  Because the disability claim relied on a different theory and statute, and because the EEOC charge would not have led the agency to suspect that he was disabled, the plaintiff failed to exhaust his administrative remedies relating to his disability.  *Id.*

///

///

Plaintiff argues that because he has alleged the same facts in both the EEOC Charge and the Complaint, the claims here are "like or reasonably related to" the allegations made before the EEOC and within the same scope of an EEOC investigation reasonably growing out of the allegations.  Thus, Plaintiff offers his EEOC Right to Sue Letter to argue he has exhausted his administrative remedies.  The Court disagrees.

Plaintiff has not alleged the same facts in the EEOC Charge and his Complaint. The EEOC Charge only refers to race and sex as the basis for the discrimination and retaliation. Notably, boxes for disability, age, and genetic information are unmarked. Like *Leong*, Plaintiff's Complaint relies on a different theory (disability, age, and genetic information discrimination) and different statutes (ADA, ADEA, GINA) than in the EEOC Charge.  For example, Plaintiff's EEOC Charge alleges "numerous objectionable and offensive comments ('Howly' and 'Stupid Ass White Boy')." (Dkt. no. 6-1 at 3.)[3]  Plaintiff continues that he "was discriminated against due to [his] Race-White, [his] Sex-Male, and retaliated against."  There is no mention of a disability, age, or genetic information discrimination; nothing would have led the EEOC to suspect that he alleged discrimination based upon these other protected statuses.  Further, disability, age, and genetic information discrimination are so different from the alleged race, sex, and retaliation alleged in the EEOC Charge that they cannot reasonably be like or related to Plaintiff's EEOC Charge.  Even construed liberally, Plaintiff's EEOC Charge contains no description of the discrimination aside from the checked boxes; thus, Plaintiff's new claims for disability, age, and genetic information discrimination are not reasonably related to allegations in the Charge.

In sum, Plaintiff has administratively exhausted remedies relating to his race and sex discrimination claims. However, Plaintiff has failed to exhaust his administrative remedies in connection with the disability, age, and genetic information discrimination

---

[3]Plaintiff's EEOC Charge appears to refer to the NERC Charge for a description of the circumstances of alleged discrimination.  (Dkt. no. 6-1 at 2.)  The Court treats the NERC language as being incorporated by reference within the EEOC Charge.

1  claims. Therefore, Plaintiff's first, third, and fourth claims are dismissed to the extent that
2  they relate to disability, age, and genetic information discrimination claims.

### 2. Failure to Exhaust Administrative Remedies – NRS Chapter 613

Any claims arising under Nevada employment antidiscrimination statutes must be administratively exhausted prior to seeking redress in the district courts. *Palmer v. State Gaming Control Bd.*, 787 P.2d 803, 804 (Nev. 1990). "An employee claiming discrimination under NRS 613.420 is obligated to file a claim with NERC *and to have that agency adjudicate the claim before* it can properly be brought in district court."[4] *Id.* (emphasis added); *Copeland v. Desert Inn Hotel*, 673 P.2d 490 (Nev. 1983).

Here, Plaintiff argues that because the EEOC Charge includes the same allegations giving rise to the Nevada law claims, he has exhausted his remedies as to his state law claims. However, while Plaintiff's Complaint alleges that he filed a charge with NERC on March 13, 2012, the Complaint fails to allege that NERC adjudicated his claims or provided a right to sue letter. Plaintiff has similarly failed to exhaust his administrative remedies with respect to claims arising under NRS 613. Plaintiff's first, second, third, and fourth claims are dismissed to the extent they relate to violations of NRS 613.

### 3. Claim 1 – Discrimination Based on Termination

Under Title VII, to establish a prima facie case of discrimination, Plaintiff must allege that (1) he belongs to protected class, (2) he was performing according to the employer's legitimate expectations, (3) he was terminated, and (4) other employees with similar qualifications were treated more favorably. *Godwin v. Hunt-Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).

---

[4] For the reasons discussed above, Nevada's anti-discrimination statutes also contemplate administrative exhaustion as a requirement on the merits, not a jurisdictional requirement. *See Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII of the 1964 Civil Rights Act5 and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases."); *Palmer v. State*, 787 P.2d 803, 804-05 (Nev. 1990) (excusing failure to exhaust remedies with NERC because of excessive agency delay).

The Complaint alleges that Plaintiff was discharged because he complained of racial slurs in the Survey and because he disclosed mold in the workplace. Even accepting these allegations as true, the challenged acts are not connected to Plaintiff's protected status as a Caucasian male. More importantly, the Complaint does not allege any facts to satisfy the second and fourth elements of Plaintiff's prima facie case. Plaintiff's first claim for discrimination alleging termination based race and gender is dismissed.

### 4. Claim 2 - Hostile Work Environment

Under Title VII, to properly plead a hostile work environment claim, Plaintiff must allege "(1) that [he] was subjected to verbal or physical conduct based on" his Title VII protected status; "(2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005) (internal quotations omitted).

Plaintiff's allegations that he was subjected to a hostile work environment because he disclosed mold in the workplace does not show that he was discriminated against based on any class afforded protection under Title VII (race, color, religion, sex, sexual orientation, gender identity or expression, age, disability or national origin). Thus, as to the mold disclosure hostile work environment claim, Plaintiff has not stated a claim for relief under Title VII.

However, Plaintiff has adequately alleged the elements of a race or sex based hostile work environment claim and has stated sufficient facts to make this claim for relief plausible. Plaintiff alleges he was subjected to verbal abuse based on sex and race, both of which are Title VII protected classes. Additionally, his complaints to management via the Survey show the conduct was unwelcome. Last, assuming all alleged facts as true, the conduct was plausibly severe and pervasive enough to alter the conditions of his employment and create an abusive work environment. Thus, this claim survives dismissal.

### 5. Claim 4 - Retaliation

Under Title VII, to properly plead retaliation, Plaintiff must allege that (1) he acted to protect his Title VII rights, (2) he suffered an adverse employment action, and (3) a causal link exists between these two events. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994).

First, Plaintiff's allegations of retaliation based on complaints of racial slurs in the Survey demonstrate that Plaintiff is a member of a Title VII protected class and was acting to protect those rights by opposing discriminatory practices by his supervisors. Second, Plaintiff has adequately alleged that he suffered an adverse employment action in that he was terminated. Last, Plaintiff has adequately alleged a causal link between his complaints and his termination. Thus, Plaintiff's claim of retaliation because of the complaints contained in the Surveys survives dismissal.

## IV.  CONCLUSION

In sum, the only remaining claims for adjudication are the second claim for hostile work environment under Title VII and the fourth claim for retaliation under Title VII because of the complaints of race and sex based comments contained in the Surveys.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Plaintiff's Complaint is GRANTED in part and DENIED in part.

DATED THIS 15th day of November 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE